Filed 7/8/26  P. v. Gonzalez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID GONZALEZ,<br><br>    Defendant and Appellant. | D086039<br><br><br>(Super. Ct. No. RIF1404885) |

APPEAL from a judgment of the Superior Court of Riverside County, Thomas Kelly, Judge.  Affirmed.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Collette C. Cavalier and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

David Gonzalez was sentenced to a term of 75 years to life after being convicted of first degree murder.  He is before us for a fourth time on appeal,

after we remanded the matter to the trial court three times for resentencing.[1] In this appeal, Gonzalez contends the trial court abused its discretion when it declined to dismiss a 25-year-to-life firearm enhancement, finding that a reduction of his sentence would "endanger public safety" within the meaning of Penal Code[2] section 1385, subdivision (c)(2). We disagree with Gonzalez and affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2014, Gonzalez was 30 years old. His 19-year-old brother-in-law, Jaime Lopez, called him from a basketball court, which was roughly four houses away from Lopez's house. Lopez told Gonzalez about a confrontation that began when Lopez noticed 21-year-old Salvador Cendejas and 25-year-old Aurelio Gonzalez (Aurelio) driving down the street. He saw Cendejas throw trash out of the car window, consisting of a fast-food meal and an empty beer can. A few minutes later, when Cendejas and Aurelio drove back the same way, passing by the basketball court, Lopez threw Cendejas's trash at the car. Cendejas and Aurelio stopped the car, and an argument ensued over the trash. Cendejas pushed Lopez two or three times. Lopez backed

---

[1] We remanded in *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez 2*), which we rely on here for the procedural history; *People v. Gonzalez* (May 1, 2019, D074726) [nonpub. opn.] (*Gonzalez 1*); and *People v. Lopez* (Feb. 21, 2018, D072636) [nonpub. opn.] (*Lopez*), which we rely on for the facts of the underlying offense. We take judicial notice of these prior opinions. (See Evid. Code, §§ 452, subd. (a), 459, subd. (c) [an appellate court on its own motion may take judicial notice of the decisional law of any state of the United States].)

[2] All subsequent statutory references are to the Penal Code unless otherwise noted.

down.  Cendejas and Aurelio decided to leave.  Cendejas said, " 'I'll be back.' "
Cendejas and Aurelio drove a few blocks to their homes and walked back to
the basketball court together.  Cendejas said he wanted to teach Lopez a
lesson.

After Lopez told Gonzalez about the confrontation, Gonzalez drove to
the basketball court and saw Cendejas.  Gonzalez got out of the car and asked
Cendejas if he was the one disrespecting Lopez.  Cendejas said, " '[Y]eah.' "
According to Gonzalez, Cendejas swung at him but missed, and then
Gonzalez punched Cendejas in the face.

Cendejas ran down the street toward Lopez's house, and Aurelio began
running too because Cendejas said Gonzalez had a gun.  Gonzalez chased
Cendejas up a driveway on the side of Lopez's house and fired one or two
shots toward Cendejas.  Cendejas ran into Lopez's yard, attempting to
escape.  He entered Lopez's house and ran through, ending up in the laundry
room.  Lopez trapped Cendejas inside and called for Gonzalez.  Gonzalez went
inside the laundry room and came out wrestling with Cendejas.  With one
hand on Cendejas's shoulder, Gonzalez got Cendejas down on his knees.  At
that point, Cendejas was not struggling.  Gonzalez then placed the gun on
Cendejas's back and fired it, killing Cendejas.

A jury convicted Gonzalez of first degree murder (§ 187, subd. (a)), with
the additional finding that Gonzalez personally and intentionally discharged
a firearm in the course of committing the murder (§ 12022.53, subd. (d)).  The
trial court subsequently made a true finding regarding Gonzalez's prior
serious felony conviction and prior strike (§§ 667, subds. (a), (c), (e)(1),
1170.12, subd. (c)(1)), which was based on Gonzalez's juvenile adjudication
for robbery involving personal use of a firearm (§§ 211, 12022.53, subd. (b)).
The trial court denied Gonzalez's motion to strike his prior strike.  It

3

sentenced him to prison for an indeterminate term of 75 years to life, which included a term of 50 years to life for the murder (calculated with doubling in light of the prior strike), a term of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)), and a consecutive determinate term of five years for the prior serious felony conviction (§ 667, subd. (a)(1)).

In Gonzalez's first appeal, we affirmed the conviction. We also remanded so that the trial court could consider dismissing the term imposed for the firearm enhancement based on a new statutory amendment. (*Lopez, supra*, D072636.) On remand, the trial court declined to dismiss the enhancement.

In Gonzalez's second appeal, we remanded the matter for resentencing, instructing the trial court to consider whether to dismiss the five-year enhancement imposed for the prior serious felony conviction. (*Gonzalez 1, supra,* D074726.) When the trial court resentenced Gonzalez, it struck the five-year term pursuant to section 667, subdivision (a). It declined, however, to strike the firearm enhancement under the newly amended statute, section 1385, subdivision (c), on the ground that Gonzalez endangered public safety at the time of the hearing.

In his third appeal, we concluded the trial court erred because it neither considered whether Gonzalez would endanger public safety at the time he could be released if it dismissed the firearm enhancement nor the fact that his release would be subject to a review by the Board of Parole Hearings and the Governor. (*Gonzalez 2, supra*, 103 Cal.App.5th at pp. 230–231.)

In March 2025, the trial court resentenced Gonzalez.[3] At the resentencing hearing, Gonzalez relied on his prior sentencing position memorandum, requesting that he be resentenced to an aggregate term of 25 years to life. Gonzalez agreed the trial court "has to look into its crystal ball to determine [whether Gonzalez will] be a danger when he's released at the age of 80-something."

Gonzalez emphasized he was only involved in two fights over the course of his 10-year incarceration; he was in a special needs yard, indicating he might be considered uniquely vulnerable; he was downgraded from a level four security threat to a level three security threat; and he had engaged in multiple rehabilitative educational and vocational programs in prison. Due to the indeterminate sentence, he would be around 80 years old at the time of any evaluation by the parole board. Accordingly, Gonzalez concluded that dismissal of the firearm enhancement would not endanger public safety within the meaning of section 1385, subdivision (c)(2).

In its ruling, the trial court considered Gonzalez's juvenile adjudication for robbery, which resulted in a commitment to the California Youth Authority. The court noted that "[i]n his favor, he did get an early discharge from parole." The court recalled that Gonzalez suffered physical, verbal, and emotional abuse by his stepfather over a long period of time, with Child Protective Services intervention and periods of homelessness in childhood.

---

[3] Judge Thomas Kelly presided over Gonzalez's trial and Deputy District Attorney Daima Calhoun was the trial prosecutor in 2015. At the resentencing hearing, Calhoun commented that the court had a "very good memory on the underlying facts," to which the court replied, "It's not a case you forget."

Additionally, the trial court noted Gonzalez is married, has children, and was a caregiver for a disabled relative, which showed a sense of compassion. The court also acknowledged Gonzalez was a counselor for underprivileged children through a program hosted by the district attorney's office. Further, at the time of the current offense, Gonzalez was involved with his church and youth mentoring.

Next, the trial court considered Gonzalez's current offense, reciting the facts of the case and recalling that after Gonzalez shot the victim in the back, he lied to the police and claimed at trial the gun accidentally misfired. The court noted Gonzalez tried to stop the flow of blood and called 911, "[s]o he gets points there, but small points."

The trial court also considered Gonzalez's behavior in prison, noting an incident where staff had to use pepper spray because Gonzalez ignored their orders to stop assaulting an inmate. And, in 2020, Gonzalez knocked out an inmate to the point of unconsciousness. Finally, the court explained that less than a year ago Gonzalez received a behavior write-up for refusing a new cellmate. The court called this "[n]ot a big violation, but still a showing of attitude in this incarceration." The court acknowledged that Gonzalez was downgraded from level four, the highest level of security, to level three, but it also noted that inmates at level three were "a dangerous crowd."

The trial court noted that if it struck the 25-year-to-life firearm enhancement, Gonzalez could be approximately 80 years old when released. Observing that there was no indication Gonzalez was in bad health, the court stated: "The fact that he's 80 does not mean much to me. You can do a lot at 80." The court remarked, "he's been acting out in a very violent fashion. He's like a lot of us, I guess, he's got a good and a bad side. Nobody is perfect. But my God, when you get a phone call just to come to break up a rumble; and

you feel you have to bring a weapon, which you shouldn't be having; and then you arrive and you see that there's no weapons there, just a bunch of guys arguing, getting in a fight; and then you take shots at them as they're running away; and you chase them, you shoot them in cold blood in a house, that's the kind of person I think is evil and will remain evil."

Accordingly, the trial court opined that Gonzalez will pose a danger to the community "as long as he lives" and declined to dismiss the firearm enhancement, reimposing the total 75-year-to-life sentence.

## II.

## DISCUSSION

A. *Relevant Legal Principles and Standard of Review*

Under section 1385, subdivision (c)(1), a sentencing court "shall dismiss an enhancement *if it is in the furtherance of justice to do so . . . .*" (Italics added.) In "exercising its discretion" on this point, "the court shall consider and afford great weight" to certain enumerated mitigating circumstances,[4] proof of which "weighs greatly in favor of dismissing the enhancement, *unless* the court finds that dismissal of the enhancement would endanger public safety." (*Ibid.*, italics added.) "That provision means that if the court finds

---

[4] There are nine mitigating circumstances: "(A) Application of the enhancement would result in a discriminatory racial impact . . . . [¶] (B) Multiple enhancements are alleged in a single case. . . . [¶] (C) The application of an enhancement could result in a sentence of over 20 years. . . . [¶] (D) The current offense is connected to mental illness. [¶] (E) The current offense is connected to prior victimization or childhood trauma. [¶] (F) The current offense is not a violent felony . . . . [¶] (G) The defendant was a juvenile when they committed the current offense or any prior offenses . . . . [¶] (H) The enhancement is based on a prior conviction that is over five years old. [¶] (I) Though a firearm was used in the current offense, it was inoperable or unloaded." (§ 1385, subd. (c)(2).)

that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances." (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 296–297 (*Mendoza*); see § 1385, subd. (c)(2); see generally *People v. Walker* (2024) 16 Cal.5th 1024, 1029, 1038.)

"The Legislature specifically defined '[e]ndanger public safety' to mean 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.'" (*Gonzalez 2, supra*, 103 Cal.App.5th at p. 227.) The trial court is not required to consider any particular factors in determining whether the dismissal of the enhancement would endanger public safety. (*Ibid.*) However section 1385, subdivision (c)(2), directs the trial court to consider "the impact to public safety if the defendant was granted sentencing relief[,]" requiring consideration of, "among other things, the date on which the defendant would be released under the revised sentence, and, in the case of an indeterminate sentence, the safety valve that exists due to the review by the Board of Parole Hearings." (*Gonzalez 2*, at p. 229.)

"In reviewing the trial court's determination that dismissal of Gonzalez's firearm enhancement would endanger public safety, we apply an abuse of discretion standard of review." (*Gonzalez 2, supra*, 103 Cal.App.5th at p. 225.) "When, ' "as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*Mendoza, supra*, 88 Cal.App.5th at p. 298.) "Absent evidence to the contrary, we presume the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042 (*Ramirez*).)

8

B.  *Analysis*

Gonzalez contends the trial court abused its discretion in denying his request to strike the 25-year-to-life firearm enhancement.  We disagree.

As Gonzalez concedes, the trial court recited the correct legal standard and took heed of our prior guidance in *Gonzalez 2*.  It also appropriately applied the legal standard, determining that Gonzalez would likely endanger the public *at the time he could be released* if the firearm enhancement was dismissed.  (See *Gonzalez 2, supra*, 103 Cal.App.5th at p. 228.)  And in accordance with our guidance in *Gonzalez 2*, the trial court expressly took into account that a future review by the Board of Parole Hearings and the Governor would occur, which "operates as a safety valve or check on any modification that I might grant today."

The trial court also appropriately considered Gonzalez's past and current dangerousness.  As we explained in *Gonzalez 2, supra*, 103 Cal.App.5th at p. 228, his current dangerousness is important because it bears on whether he *will* still be dangerous at the time of his modified release.  Accordingly, the trial court properly considered Gonzalez's criminal history, which started as a juvenile when he was convicted for robbing and assaulting a person in a public restroom, and the circumstances of the current offense.  Specifically, the court highlighted that Gonzalez showed up with a gun to break up an argument over some trash, pursued and fired a gun at a person running away, and executed a person, who was on his knees, harmless, with no weapons, and pleading for his life.  The court reasonably found these circumstances relevant to Gonzalez's ongoing dangerousness because they were "aggravated," "extremely callous," and amounting to a "cold-blooded execution."

Following our guidance in *Gonzalez 2, supra*, 103 Cal.App.5th at p. 228, the trial court considered how the dismissal would impact Gonzalez's sentence and acknowledged that if it struck the firearm enhancement, Gonzalez would be released when he is around 80 years old.  Nevertheless, the court reasonably determined that the passage of time would not reduce Gonzalez's risk to the public because his prison records demonstrate he has not chosen the path of rehabilitation.  Indeed, Gonzalez's pattern of violence and callousness continued in prison when he assaulted an inmate and ignored orders to stop.  As recently as March 2020, Gonzalez knocked out an inmate and left him unconscious.

The statute requires a judge, after considering the nature and severity of the offense and other relevant facts, to use their best judgment.  Given the trial court's consideration of the aggravated circumstances of the crime and Gonzalez's resistance to rehabilitation and violence in custody after committing such a crime, we cannot say that the court's determination that dismissal of the enhancement "would endanger public safety" (§ 1385, subd. (c)(2)) was so irrational or arbitrary that no reasonable judge could agree with it.

Gonzalez contends the trial court's decision was fundamentally incompatible with the principles, purposes, and goals underlying sections 1385, subdivision (c)(2), and 12022.53, subdivision (h).  In particular, he emphasizes that the purpose of incarceration is rehabilitation and successful reintegration.  He relies on legislative history and committee reports to show that the Legislature acknowledges that defendants are capable of rehabilitation and tend to rehabilitate as they age.

Although we do not disagree that the Legislature has expressed a focus on rehabilitation, we are not persuaded the trial court's decision was

10

incompatible with this purpose. First, section 1385, subdivision (c)(2), does not require the trial court to consider any committee reports, particular factors, or empirical research in determining whether "there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (See § 1385, subd. (c)(2); *Gonzalez 2, supra*, 103 Cal.App.5th at p. 227.)

Second, striking a 25-year enhancement from a convicted criminal's sentence subjects society to the risk that it will be victimized during the period when he would otherwise be confined. Of course, Gonzalez is *capable* of rehabilitation in theory. The pertinent question is, *will he* be rehabilitated by the time of the modified release date to a sufficient level that he will not endanger public safety? This question requires a judicial determination based upon an "*individualized* consideration of the offense, the offender, and the public interest." (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 978, italics added.) On this record, a court could reasonably find the chances of full rehabilitation are slight.

When the trial court considered all it knew about Gonzalez, including his "extremely callous" murder, along with the prison records which showed his continued callousness and resistance to rehabilitation, the court reasonably found Gonzalez was unlikely to rehabilitate to a sufficient level during his lifetime. In the court's words, there is "a likelihood, for as long as he lives he's going to pose a danger to the community."

The trial court reasoned that Gonzalez's senseless offense was an outgrowth of his character, which is necessarily hard to change. The court further reasoned Gonzalez's character was unlikely to change in the number of years he had left to live. In the trial court's more cutting language, Gonzalez is "the kind of person I think is evil and will remain evil." While we

11

may have chosen our words differently, the trial court's analysis reflects an individualized consideration of the offense and the offender, and its determination is not incompatible with the spirit of the law.

The trial court exercised its best judgment in making a weighty and challenging prediction. We presume the court was informed by the law, its decision was in conformity with its spirit (see *Ramirez, supra,* 10 Cal.5th at p. 1042), and we will not impermissibly substitute our judgment for the judgment of the trial court (*People v. Hoffman* (2021) 61 Cal.App.5th 976, 978). For all these reasons, we conclude the court did not abuse its discretion. Gonzalez's claim of error, therefore, fails.

III.

DISPOSITION

The judgment is affirmed.

KELETY, J.

WE CONCUR:

DO, Acting P. J.

CASTILLO, J.

12